## WHEELER COMPANY vs. ABBOTT-BEEBER COMPANY.

APRIL 24, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an appeal from a decree of the superior court upon a petition of permanent receivers of the respondent corporation for instructions with respect to a claim of The Wheeler Company, hereinafter referred to as the appellant.

In their petition, the receivers requested instructions as to the proper disposition of certain funds which the appellant claimed it was equitably entitled to by virtue of (1) assignments to it of accounts receivable of respondent cor-

poration duly executed before the commencement of the receivership proceedings; (2) assignments to it of accounts receivable prepared for execution by respondent corporation's treasurer, Morris Beeber, but not executed by him; (3) other accounts receivable, not posted in respondent corporation's ledger, but which appellant alleged Morris Beeber had agreed with appellant would be assigned.

The petition was heard by a justice of the superior court and, at that hearing, the appellant was afforded ample opportunity to present evidence in support of its claim and to argue the merit thereof on the evidence and the law. After hearing, the justice of the superior court filed a rescript in which he found that the appellant was entitled to the accounts receivable referred to in (1), and that it was not entitled to those referred to in (2) and (3).

The appellant claims, in its reasons of appeal, that the decision as to (2) and (3) is against the evidence, against the law, against the law and the evidence and against the weight thereof. It also sets out certain other specific reasons of appeal, but since they have been neither briefed nor argued to us, we do not consider them. As we understand the appellant's position on the reasons of appeal which it has pressed here, it contends that the justice of the superior court has drawn certain erroneous conclusions from the evidence and that he has also made certain erroneous applications of law to the evidence.

The evidence is undisputed. From April 1935 until February 2, 1938, the appellant loaned to respondent corporation varying sums of money on the latter's demand note and took, as security for such loans, assignments of certain accounts receivable of the respondent, which were executed by its treasurer, Morris Beeber. The last loan was made on February 2, 1938, in the sum of $3000. On February 12, 1938, the total amount due the appellant was $52,350.99.

On that date, which was a Saturday, Morris Beeber committed suicide. On Monday, February 14, 1938, the appellant filed a petition in the superior court for the appointment of a receiver for the respondent corporation, and a temporary receiver was forthwith appointed. About ten days previously, the appellant had received a check from the respondent corporation in payment of certain invoices which had been assigned. Under the assignment agreement the respondent was required to turn over to the appellant all checks which respondent received from its customers in payment of those assigned invoices. Upon receiving this check of the respondent rather than the check of such customer named in the invoice, appellant, through its president, Leonard Levin, became suspicious and demanded an explanation of Morris Beeber.

The explanation given by Beeber did not allay Levin's suspicion and he insisted on an examination by appellant's accountant of respondent's books of account. Beeber agreed to this but said the books would not be available until February 10. On that date appellant's accountant examined the books and found that respondent was keeping two sets of books and also that many of the invoices previously assigned to appellant were fictitious, either in whole or in part. Upon learning of this situation, Levin, on the evening of that same day, had Beeber come to his (Levin's) house where Beeber confessed what he had done. Thereupon Levin told him that if he would execute on behalf of the respondent corporation new assignments of all its accounts receivable as security for its existing indebtedness to the appellant amounting to more than $52,000, which sum was substantially in excess of the aggregate amount of said accounts, and if he would also give a mortgage to appellant on respondent's machinery and equipment, appellant would cooperate with respondent and make additional loans, if necessary, to assist it, otherwise the appellant would "close up" the respondent corporation. Beeber agreed, and said

that on the following day, which was Friday, February 11, 1938, he would make such assignments.

On Friday Levin had Louis Garfinkle, appellant's vice-president and treasurer, go with him to the respondent corporation's office where they met Beeber, who assured Garfinkle that he would make the necessary assignments and mortgage just as he had previously assured Levin on the preceding Thursday night. Levin then told Beeber that on Saturday morning he would send to the latter's office the appellant's bookkeeper to assist in preparing the assignment of the accounts that Beeber had said he would assign.

On Saturday appellant's bookkeeper went to respondent's office at about eleven o'clock in the morning and found two clerks preparing the assignments under instructions from Beeber. When the drafting of the assignments was completed, appellant's bookkeeper checked them with the respondent's ledger and found that all invoices posted in the ledger were included. There were certain invoices, however, that were not posted in the ledger and these were not included in the assignments which had been prepared. When this work had been completed and the assignments were ready for Beeber's signature, it was discovered that he had committed suicide in his office.

This evidence presents the question whether the promise of Beeber, on behalf of the respondent corporation, to assign all its accounts receivable was a contract to assign, and, as such, effective as an equitable lien on such accounts receivable in favor of the appellant. There is also a further question, namely, whether such contract continued to exist, notwithstanding the suicide of Beeber and the filing immediately thereafter on the next court day of appellant's petition for appointment of a receiver of the respondent corporation.

The appellant contends that such evidence brings it within the rule laid down in the Restatement of The Law of

Contracts, § 166, (1), to the effect that "a contract to assign as security a right which is specified and capable of effective present assignment under § § 151, 154, gives the promisee a right against the obligor inferior to that of an assignee only in that the right will be extinguished if, before satisfaction is obtained by the promisee, an assignment of the obligee's right is made to a bona fide purchaser for value without notice of the prior contract." Granting that the foregoing is a correct statement of the law and conceding for the present purpose that the promise of Beeber was a contract to assign, the question arises whether such contract was to assign in the future.

If we scrutinize the evidence, it appears therefrom that Beeber promised that he would assign all accounts receivable and that he would have prepared at his office the necessary assignments for this purpose. It also appears that Levin, acting for the appellant, did not understand that he had obtained an oral assignment of the accounts on the night of his first interview with Beeber but rather a promise from Beeber that the respondent corporation would make an assignment on the next day. This is evident, it seems to us, from the insistence of Levin and Garfinkle that the accounts be identified from respondent corporation's books and written assignments be executed for each of them by Beeber. This procedure was started but not completed because of Beeber's suicide, and thus his promise to assign these accounts in accordance with the assurances which he had received from Levin and Garfinkle was made impossible of performance.

That there was no actual assignment by virtue of Beeber's promise that he would assign is borne out by the conduct of the appellant immediately after Beeber's suicide. Levin and Garfinkle had assured Beeber that if he would assign these accounts and give appellant a mortgage on respondent corporation's machinery, it would cooperate with and assist

the respondent corporation in its difficulties; otherwise appellant would "close up" respondent corporation. Appellant promptly took the latter action after Beeber's suicide and thus recognized, it seems to us, that it had no valid assignment of these accounts.

But if we assume that this was not a contract merely to assign in the future, there is a further obstacle to the appellant's contention, namely, a failure of consideration to support Beeber's promise. If Beeber's promise was a contract to assign presently, the consideration for it was Levin's assurance, later confirmed by Garfinkle, that the appellant would assist the respondent corporation to remain in business. That assurance never was fulfilled but, on the contrary, the appellant did the very opposite of what its agents had promised. It threw respondent corporation into an involuntary receivership. It thus elected not to go through with such contract with Beeber and compel specific performance thereof by respondent corporation. In other words, it did what the trial justice found, namely, it treated the contract as rescinded. And it thereupon resorted to equity to conserve the respondent's assets so that it might be assured of a fund out of which it could obtain satisfaction of its claim.

In this connection we must not lose sight of the fact that the appellant is now seeking, within the receivership proceeding, to establish itself as a preferred creditor with rights over the funds in the receiver's hands superior to general creditors. Under these circumstances, we must weigh the equities not merely between appellant and the respondent corporation but rather between appellant and other *bona fide* creditors of the respondent corporation. Viewed in this light, the evidence upon which the appellant relies to establish its claim to an equitable lien over all of the respondent corporation's accounts receivable, which Beeber promised he would assign but did not before com-

mitting suicide, does not, in our opinion, measure up to the requirements laid down by the authorities as necessary to the establishment of such a lien. *Ketchum* v. *St. Louis*, 101 U. S. 306, 307; 3 Pomeroy's Eq. Juris., (4th ed.) § 1235.

The appellant nevertheless contends that *In re Sullivan*, 21 F. (2d.) 834, decided by the district court for the district of Massachusetts, is squarely in point in its favor. We do not think so. That was a bankruptcy case. Sullivan, the bankrupt, had, previously to his bankruptcy, assigned certain of his accounts receivable over to a creditor who had loaned him a large sum of money with the understanding that he, Sullivan, was to collect the accounts and pay the creditor the proceeds. Later, within four months of the filing of an involuntary petition in bankruptcy, the creditor discovered that many of the assigned accounts were fictitious and thereupon made Sullivan replace these fictitious accounts with good ones. The question before the court on this evidence was simply whether the supplying of new accounts to replace the fictitious ones within four months of bankruptcy constituted an illegal preference under the federal bankruptcy law; and the court held it did not. While the court observed that the case was similar to those which involve the doctrine of equitable lien, it does not seem to us that the case is authority for a situation such as is presented by the evidence in the instant cause. The most that can be said for the case is that had the alleged fictitious accounts in the instant cause actually been replaced by good ones, as they were in the *Sullivan* case, that case would be nearer in point.

It will be noted that in the *Sullivan* case the creditor was not invoking the power of a court of equity to impress a lien on some specific portion of its debtor's property not under its control, but was resisting a claim of the bankrupt's trustee that it had obtained an illegal preference over other creditors because it was exercising control over a certain

specific portion of the bankrupt's property that had actually been transferred to it by the bankrupt within four months of his bankruptcy. Whether the appellant in the instant cause had the right, without further consideration moving from it, to compel the respondent corporation to replace the fictitious accounts with new assignments of good accounts, as was done in the *Sullivan* case, we need not consider, as that question does not, in our opinion, arise on the evidence here.

For the reasons stated, we are of the opinion that the trial justice did not err in holding that the appellant was not entitled to accounts hereinbefore referred to as (2) and (3).

Accordingly, the appellant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Andrew P. Quinn, Richard F. Canning,* for petitioner.

*Voigt, Wright, Munroe & Clason, Ernst T. Voigt,* for respondent.